UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

IN RE:

Benjamin Ojeda, Jr.
Nancy Ann Ojeda,

        Debtors.
_____/

Case No. 9:19-bk-06611-FMD
Chapter 13

## AQUA FINANCE, INC.'S REPLY TO DEBTORS' ARGUMENT TO SUPPLEMENTAL AUTHORITIES

COME NOW, Quantum3 Group LLC, as agent of Aqua Finance Inc. (hereinafter collectively "Creditor"), by and through its undersigned counsel, and files this Reply to Debtors' Argument to Supplemental Authorities Provided by Aqua Finance, Inc. at the Hearing on Debtors' Objection to its Claim (Doc 51), and as grounds therefore would state:

## BACKGROUND

1. On or about May 8, 2015, Debtors Benjamin and Nancy Ojeda ("Debtors") entered into a Retail Installment Contract and Security Agreement (the "Contract") with Creditor whereby Debtor obtained secured financing with Aqua Finance, Inc. ("Aqua") for the purpose of purchasing an inground swimming pool (the "Pool") to be installed on their residence at 3330 Banyon Hollow Loop North Fort Myers, Florida (the "Real Property"). Pursuant to the Contract, Debtors granted Aqua a purchase money security interest (PMSI) lien in all goods or services purchased under the Contract. Moreover, Aqua perfected its PMSI fixture lien against the Real

Property by filing a UCC Financing Statement in Lee County, Florida with the Clerk of the Court Office.

2. On July 22, 2019, Creditor timely filed secured proof of claim 5-1 in the bankruptcy case for the account ending in xxx0247 (the "Claim").

3. On December 3, 2019, Debtors filed an Objection to the Claim. (the "Objection") (Doc. 30). The Objection raises two separate grounds. First, the Objection asserts that Creditor's lien cannot attach to the homestead because Creditor did not hold a mortgage. Second, the Objection asserts that Creditor's lien cannot attach to the Debtors' homestead because the underlying Agreement was only signed by Nancy Ojeda.

4. On December 23, 2019, Creditor filed a Response to the Objection (the "Response") (Doc. 36).

5. On December 30, 2019, Debtors filed a Reply to the Response (the "Reply") (Doc. 38). In the Reply, the Debtors correctly acknowledge that the underlying Agreement was signed by both Debtors. In the Reply, the Debtors also assert for the first time that the Creditor does not have a valid fixture lien because the Pool was not "movable" as defined in Article 2 of the UCC.

6. On January 23, 2020, a preliminary hearing was held on the Objection. At the hearing, Creditor cited BMC Industries Inc v. Barth Industries, Inc., 160 F.3d 1322 (11th Cir. 1998), Propulsion Technologies, Inc. v. Attwood Corp., 369 F.3d 896 (5th Cir. 2004), and In re Alex Castillo, 19-20156-JKO (Bankr. S.D Jan. 22, 2020) in support of its position that the Pool is a "Good" as defined under the UCC, and that Creditor properly perfected its fixture lien. At the conclusion of the hearing, the Court indicated that the Objection would be taken under advisement.

7. On February 18, 2020, Debtors filed its Argument to Supplemental Authorities Provided by Aqua Finance, Inc At the Hearing on Debtors Objection to its Claim (the "Argument

to Supplemental Authorities") (Doc 51), in which the Debtors assert that the above three cases cited by Creditor at the Preliminary hearing all support Debtors' position that the Pool is not a "Good" under the UCC. However, as explained below, these cases support Creditor's position that the Pool is a "Good" under the UCC, and that Creditor properly perfected its fixture lien.

### BMC Industries Inc v. Barth Industries, Inc. ("BMC")

8. BMC Industries, Inc. was a manufacturer of eyeglass lenses, that contracted with Barth Industries to design, manufacture and install equipment to automate its production line. In BMC, the Court sought to determine if the underlying contract was a transaction in Goods (covered by the UCC), or Services (not covered by the UCC). To make that determination, the Court applied the "Predominant Factor Test".

9. In applying the Predominant Factor Test, the Court held that no single factor is determinative in classifying a hybrid contract as one for Goods or Services. The Court then discussed three (3) aspects of such contracts that it stated would be particularly significant in making that determination.

10. The first aspect of such contracts considered by the Court as significant in the analysis under the Predominant Factor Test is the language of the contract itself, which the Court opined would provide insight into whether the parties believed the Goods or Services were the more important element of their agreement. The Court noted that the Contract was titled "Purchase Order" which the Court indicated was instructive, as the parties chose to identify their Agreement by a name used almost exclusively for transactions in Goods. In the pending case, the parties entered into a Retail installment Contract and Security Agreement (the "Contract"), which is also

a name used almost exclusively for transactions in goods. Additionally, the Contract expressly provides that the Buyers granted Seller with a security interest in the Goods purchased. The <u>BMC</u> Court also found it noteworthy that the parties referred to themselves in the Contract as the "Buyer" and "Seller", which would indicate that the parties contemplated a contract for goods rather than services. Similarly, in the pending case, the parties consistently refer to themselves as "Buyer" and "Seller" throughout the Contract.

11. The second aspect of hybrid contracts considered by the Court as significant in the analysis under the Predominant Factor Test is the manner in which the transaction was billed. The Court stated that "when the contract price does not include the cost of services, or the charge for goods exceed that for services, the contract is more likely to be for goods". In the pending case, the Contract only provided for a "Sales price" and did not include any costs for services.

12. The third and last aspect of such contracts considered by the Court as significant in the analysis under the Predominant Factor Test is whether the goods were movable. In finding that the subject materials that went into the equipment were "movable" under the UCC, the Court used the analogy that a contract providing for the materials and labor for the installation of a new roof was a contract for goods because the materials to be installed were movable. In ground swimming pools are similarly composed of many materials and other items that are initially movable. Not only do such pools include cement, rocks, and other raw materials, but they also often include a pool pump, pool cleaner, pool heater, ladders, diving boards, and other miscellaneous items.

13. After applying the Predominant Factor Test, the <u>BMC</u> Court held that the underlying contract was predominantly a transaction in Goods.

14. In their Argument to Supplemental Authorities, Debtors do not specify how <u>BMC</u> supports their position, but merely concludes that the underlying contract for the Pool was predominantly for services, "…with any goods such as the materials being incidentally involved." However, for the reasons set forth above, and in applying the Predominant Factor Test to the pending case, the Pool is a "Good" under the UCC.

### <u>Propulsion Technologies, Inc. v. Attwood Corp. ("Propulsion")</u>

15. In their Argument to Supplemental Authorities, Debtors do not specify how <u>Propulsion</u> supports their position, but merely concludes that the underlying contract for the Pool was predominantly for services, "…with any goods such as the materials being incidentally involved."

16. Although <u>Propulsion</u> was another case in which the Court determined that a hybrid contract was for Goods covered by the UCC, Creditor cited this case not for its ultimate ruling, but rather for its discussion as to the scope of the UCC's definition of "Goods". In <u>Propulsion</u>, the Court stated that the UCC coverage of "Goods" is not narrow, and should be viewed as being broad and liberally construed in order to carry out the underlying purpose of the Code of achieving uniformity in commercial transactions. Notably, this often benefits the buyer, as the UCC provides for certain warranties not available under the common law.

### <u>In re Alex Castillo ("Castillo")</u>

17. In their Argument to Supplemental Authorities, Debtors do not specify how <u>Castillo</u> supports their position, but merely distinguishes it as <u>Castillo</u> involved windows and not

a pool. However, Creditor cited <u>Castillo</u> only to respond to the Debtors' Objection which asserted that a fixture lien cannot attach to realty without a mortgage. In <u>Castillo</u>, Judge Olson held that the UCC fixture filing perfected the fixture lien on the realty, and that the Creditor was not required to file a separate mortgage to perfect its security interest.

DATED: March 6, 2020.

/s/ Gary J. Lublin
GARY J. LUBLIN, of
Rush, Marshall, Jones and Kelly, P.A.
P.O. Box 3146
Orlando, FL 32802-3146
(407) 425-5500
(407) 423-0554 Facsimile
Florida Bar No: 542679
Attorney for Creditor
glublin@rushmarshall.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served on this 6th day of <u>March</u>, 2020, by electronic notice if registered in the Electronic Case Filing system, otherwise by first class postage prepaid U.S. Mail to: Benjamin and Nancy Ann Ojeda, 3330 Banyon Hollow Loop North Fort Myers, FL 33903, Debtors, David Lampley and David W Fineman, 1436 Royal Palm Square Blvd, Fort Myers, FL 33919-1049, Attorneys for Debtors, Jon Waage P.O. Box 25001 Bradenton, FL 34206-5001, Chapter 13 Trustee, Office of the U.S. Trustee, 5501 E Polk Street Tampa FL 33602.

RUSH, MARSHALL, JONES and KELLY, P.A.
Attorneys for Creditor

SEND ALL NOTICES TO:   By: /s/ Gary J. Lublin

RUSH, MARSHALL, JONES and KELLY, P.A.        Gary J. Lublin, for the firm
Attn:Gary J. Lublin                          Florida Bar No. 542679
Post Office Box 3146                         Telephone 407-425-5500
Orlando, FL 32802-3146                       Facsimile 407-423-0554
                                             email: glublin@rushmarshall.com